**LAWSON et al. v. FIRST NAT. BANK OF ROTAN et al.**

No. 5283.

Court of Civil Appeals of Texas. Amarillo.

March 31, 1941.

Rehearing Denied April 28, 1941.

McWhorter, Howard & Cobb, of Lubbock, for appellants.

Turner, Seaberry & Springer, of Eastland, for appellees.

FOLLEY, Justice.

This suit was filed by the appellee, First National Bank of Rotan, Texas, against the Lubbock Auction & Commission Company, a partnership composed of H. G. Lawson and three others, for the alleged conversion of 45 head of cattle purchased by the commission company from J. D. Windham on August 15, 1939, at Lubbock, Texas. The appellee bank alleged it held a mortgage upon such cattle executed by Windham. The commission company made Windham a cross-defendant, specifically denied the conversion and alleged that the bank had waived its mortgage and further pleaded estoppel as against the bank's claim.

The cause was submitted to a jury upon a single issue which inquired whether prior to August 15, 1939, Guy Patterson, as vice-president of the appellee bank, did not consent to the sale by J. D. Windham of the 45 head of cattle sold by him to the commission company. In connection with such issue the jury was instructed that consent is an agreement on the part of two or more parties that a thing may be done which is prohibited in the absence of such an agreement; that consent might be either express or implied; that express consent was that expressed by voice or in writing; that implied consent was that which is manifested by signs, actions or facts, or by inaction or silence from which consent to do a thing otherwise prohibited might be implied. In response to such instruction the jury answered the issue as follows: "He did not consent". Upon such verdict the court rendered judgment in favor of the bank and against the partners composing the appellant commission company for the sum of $1,256.80, the agreed value of the cattle sold, with legal interest thereon from August 15, 1939. Judgment was also rendered in favor of the partners and against J. D. Windham for the same amount. There is no appeal from the judgment against Windham. The partners composing the commission company have prosecuted an appeal from the judgment against them.

The facts reveal that in May, 1939, J. D. Windham was a farmer and stockman residing about nine or ten miles west of Rotan in Fisher County, Texas. At such time he was indebted to the appellee bank in the sum of about $400. To secure such indebtedness he had theretofore executed and delivered to the bank a chattel mortgage upon 17 head of cattle located on his farm in Fisher County. Such mortgage also covered his 1939 crop and "all other cattle, sheep, hogs, horses and other livestock situated in said County aforesaid, now owned, or that may be hereinafter acquired, by said mortgagor, until this mortgage is released in full, * * *". On May 16, 1939, Windham purchased from the appellants in Lubbock 51 head of additional cattle for which he gave them a check for about $1,170 on his account in the appellee bank. One of the appellants telephoned Guy Patterson at the appellee bank in Rotan and asked about the payment of such check. Patterson informed him in substance that the check was not good at such time but he imagined it would be paid when presented. The 51 cows were delivered to Windham and under his direction were removed to Fisher County. Thereafter, on May 25, 1939, Windham

executed another note and mortgage to the bank evidencing and securing an additional loan to him by the bank in the sum of $1,235. The testimony shows that this loan was made for the purpose of paying the check theretofore given to the commission company. The mortgage securing such loan covered 51 head of cattle which were described as 24 head of mixed cows and 27 head of mixed calves, part of the cattle branded D on the left hip, part branded 3A on the left hip and all located on Windham's farm and the C. E. Hendrix farm about ten miles west from Rotan in Fisher County. This mortgage also contained the same clause as did the prior mortgage with reference to its covering all cattle and livestock situated in Fisher County then owned or that might be thereafter acquired by the mortgagor. All dealings between Windham and the bank with reference to these loans and mortgages were handled through Patterson as vice president of the appellee bank. On August 15, 1939, Windham sold 45 head of his cattle to the appellants in Lubbock which cattle were brought from his farm in Fisher County the day before the sale. The appellants paid Windham $1207.86 for the 45 head of cattle. Such amount did not include the handling charges in the further sum of $48.95. For the purposes of this trial the sum of $1,256.81 was the agreed value of the cattle sold by Windham to the appellants. These cattle were immediately disposed of by the appellants. It is admitted that the appellee bank received none of the proceeds from the sale. It is not disputed that at the time the cattle were sold Windham owed the bank more than $1,600 which amount has never been paid. No contention is made that there existed any other property under the mortgage sufficient to satisfy the bank's debt. In fact, the record reveals that all of the mortgaged property had been exhausted at the time of the trial and that the debt remaining unpaid was far in excess of the agreed value of the 45 head of cattle purchased by the appellants.

We think it is conceded by all the parties to this suit that the appellants are guilty of conversion unless the defenses urged by them defeat the enforcement of appellees' claim. The appellants present numerous assignments and propositions attacking the court's judgment in this respect. Their chief contentions may be reduced to the following closely related issues: (1)

That the special issue above mentioned limited the jury to the consent of Guy Patterson to the sale of the cattle when there were other officials of the appellee bank who may have consented thereto; (2) that the bank as a matter of law waived its mortgage; (3) that due to the facts and circumstances surrounding the sale of the cattle the bank was estopped to assert its mortgage; and (4) that the cattle sold by Windham were not the same cattle mortgaged to the bank.

█ The only testimony in the record with reference to the bank's express consent for the sale came from J. D. Windham. His testimony confines such consent strictly to Guy Patterson. There was no intimation from his testimony or from any other testimony introduced that any other official of the bank gave Windham permission to sell the cattle. The evidence showed that after the purchase of the cattle in Lubbock in May, 1939, and prior to the sale on August 15, 1939, Windham had sold a few head of cattle, some at Fort Worth, some at Sweetwater and a few to the appellants in Lubbock. Windham testified that he talked with Patterson about selling these cows before and after they were sold and that Patterson told him it would be "all right". Windham also testified that just a few days prior to the sale of the cattle to the appellants on August 15, 1939, he talked with Patterson and told him that "we had to go somewhere with those cattle and change them into some other kind" and that Patterson replied, "O. K., leave that to you". Patterson not only denied all such conversations but further stated that he did not know any of the cattle had been sold until after the sale of August 15, 1939. The jury apparently adopted Patterson's view of this controversy. Under the above testimony we think the issue submitted was in keeping with both the pleading and the evidence and completely exonerated the bank from appellants' claim that its consent had been obtained for the sale of the cattle involved in this suit.

█ On the issue of waiver the appellants assert the bank may not recover because Windham sold some of the mortgaged cattle prior to August 15, 1939, and deposited checks therefor to his account in the appellee bank which checks contained notations on their faces indicating they were given for cattle sold by Windham. The appellants contend such facts

operate as a waiver of the mortgage as a matter of law. It has been held that mere knowledge that a mortgagor is selling mortgaged property is not within itself sufficient to support a finding that the mortgagee waived the lien. Weeks et al. v. First State Bank of DeKalb, Tex.Civ.App., 207 S.W. 973. We are also of the opinion that the mere indulgence of the debtor and forbearance to foreclose the mortgage will not establish the issue of waiver as a matter of law. Granting that the bank knew Windham was selling mortgaged property, which was expressly denied by Patterson, still, such knowledge does not conclusively show as a matter of law an intentional relinquishment of any rights under the mortgage. 9 Tex.Jur. 185, para. 78. At most, it presents only a question of fact which has been resolved against the appellants by the above finding of the jury.

 We are further of the opinion the element of estoppel is not even remotely in this case. The only communications ever shown to have transpired between the appellants and the bank was the telephone conversation of May 16, 1939, with reference to the payment of Windham's check. Certainly, since this check was paid, there was nothing about this conversation upon which estoppel might be predicated. Other than this there were no other communications or dealings between the bank and the appellants. There was no showing of any false representations or concealment of material facts upon the part of the bank nor was there any showing that appellants were in any manner misled, deceived or injured by the bank's conduct. Absent such essential elements there is no estoppel. 17 Tex.Jur. 137, para. 9; Steed v. Petty, 65 Tex. 490; Westbrook v. Guderian et al., 3 Tex.Civ.App. 406, 22 S.W. 59; Irvin v. Irvin, Tex.Civ.App., 7 S.W.2d 1103.

We also think the cattle sold to the appellants were shown to have been covered by appellees' mortgage. Both of the mortgages held by the appellee embraced all the cattle and livestock owned by Windham in Fisher County at the time the mortgages were executed and such cattle and other livestock as might thereafter be acquired by him. The evidence is undisputed that the cattle in controversy belonged to Windham and that they were located on his farm in Fisher County until the day before the sale at which time they were hauled in trucks from such farm to the pens of the appellants in Lubbock, Texas. It is certain that the mortgagor either owned the cattle in controversy at the time the mortgages were executed or he acquired them thereafter. In either event they were covered by the mortgage. The appellees' mortgages were forthwith duly registered in the chattel mortgage records of Fisher County and were sufficient, we think, to put the appellants upon notice and inquiry. Childress et al. v. First State Bank of Barnhart, Tex.Civ.App., 264 S.W. 350; Fort Worth Nat. Bank v. Red River Nat. Bank, 84 Tex. 369, 19 S.W. 517; Lapowski et al. v. Taylor, 13 Tex.Civ. App. 624, 35 S.W. 934.

The appellants also assert that the court erred in refusing to admit certain testimony. We have carefully examined these assignments and, finding no error in them, overrule them without further discussion.

 The appellants further complain of the refusal of the court to submit to the jury four special issues requested by them. We have also carefully examined these assignments and have concluded the issues requested were either adequately presented in the one issue submitted to the jury or were unwarranted under the pleadings and evidence.

The judgment is affirmed.